The next matter, number 25-1064, Nakia Wilson et al. v. Iguana Sport Services, Corp. At this time, would counsel to the appellants please introduce themselves on the record to begin. Good morning, your honors. My name is Jorge Quintana. May I please record? Not one second. I just want counsel to be seated.  Sorry. Okay. Yeah. If I may please the court, my name is Jorge Quintana. I would like to reserve three minutes for rebuttal. You can be seated. Yeah. Okay, go ahead. Yes, sir. I would like to reserve three minutes for rebuttal.  Yes. So, your honor, this case is about a district that granted a summary judgment in favor of defendant Iguana Sport Services by holding that they didn't have any either contractual or regulatory or duty for safety towards plaintiffs and the deceased brothers and neither under Article 1536 of the Puerto Rico Civil Code. By deciding the fact, I mean, all of the facts, the district court center was in the fact that they didn't find, the court didn't find that the one page agreement between purported as Iguana's agreement with the hotel did not mention that Iguana was responsible for the safety of the people enjoying the beach facilities. Well, for starters, that agreement does not either say that Iguana is not responsible for it. Right? So, the court then goes and concentrates on 10 LPRA 711A in the definition of hotels, but the court only determines that what would define a hotel would be only the lodging and meals, right? And when you go to this article, the article clearly states that service provided to the hotel guests and other amenities could also turn a party into an innkeeper. So, the other thing that the – I thought you're not relying on the statutory definition of innkeeper. Well, it is under opinion and order, Your Honor. What? It's under opinion and order. That's the ruling of the court. Yeah, but you are on appeal not challenging that, I thought. Are you saying that you are an innkeeper for the purpose of the statute? Well, we are pleading that the facts that surround this agreement and the way that it operates I understand. That's an agreement. Under the statute? Well, yes, Your Honor, because it's related to the facts, right? That's the ruling factor in the opinion and order. So, what we're saying is the facts of the case did indeed turn them into an innkeeper. There's a statute, right? There's a statute, Your Honor. The statute imposes a heightened duty on innkeepers as a statutory matter. Yes. Right? And I thought you were saying you're not an innkeeper. Well, we're saying that they have the duties of the innkeeper. They are an innkeeper in relation to the hotel relationship because of the many facts that are on the record. What we're addressing on the appeal is the facts that support that they are an innkeeper. Under the statute? Under that statute and under the Puerto Rico Civil Code, Your Honor. I was looking at your brief. I think the better argument that you have, you say that there's the condition, I believe it's condition 28, the Department of Natural Resources. Yes, sir. That Iguana, you know, knowing the weather conditions since, I guess, 4 in the morning, should have taken some measures. Is that the crux of your argument? That is one of them. It's a very strong point on our appeal, Your Honor. You're right about that. Okay. And let me ask you regarding, let's assume Iguana knows the beach is really, really bad. It's rough. Where in that, what does Iguana have to do under condition 28? They don't close the beach. What they do is provide chairs, towels, you know, there could be, you know, we've all been prior to beaches where we don't go to the water, but we just sunbathe the whole day. What was Iguana supposed to do then? They don't only do those. If we go to the deposition, we deposed Pedro Pagan, which Iguana's employee on the date of the accident, deposed on him, was, what do we do, if anything, in relation to the beach reason? When it looks ugly, there's another testimony, which is Sandra Santos, which is the head of security for the hotel. On one side, she said, deposed on her about safety. Have you had any, what, I mean, who's in charge of dealing with that? She addresses, well, the beach and pool guys, and the pool are the two things. The court here says that they're not in, because they don't do any of the, because that's an error, Sandra Santos deposed. She was asked what are the main, and she testified, three, right, the casino, the beach, so two of the main, other than being on the roof, attractions are operated by Iguana on the other side, that they provide, they operate outside of this permit, your honor, because they are going, and they're giving this, if I may, your honor, if I may interrupt, the thing is that they give this away, they know that they're giving the amenity, so it's more than what the district court said, that's giving towels and chairs. Iguana employees wear Marriott uniforms, correct, also? Yes, and they were also, yeah, that's the thing, when they get, when they come out of the hotel, your honor, the hotel, when they go out of the door, there's no other provider, like they went into an independent contractor, and they enjoyed those facilities, not the hotel. Let me just add. Yes, your honor. This is in your brief, and maybe I misread what you were saying here. You say, in turn, the district court posited that because Iguana is not an innkeeper, the regs don't apply, and as such, Iguana did not have a duty. Then you say, the district court attempted to generalize Iguana's function with that of a hotelier. Plaintiff have never contended that Iguana is an innkeeper, as they do not own the hotel. Yes, your honor. Nor do plaintiffs contend that Marriott and Iguana incorporated a joint venture. Then you say, plaintiff's position is that under Puerto Rico contract law, Marriott and into an agreement where the latter assumed the beach operation that Marriott was required to have by the PRTC regs, and with it, all the responsibilities imposed by such regulations on the innkeeper. As I read that, I had thought you were saying, you're not relying on the statute, you're just saying there's a contractual basis for them having these duties, but are you saying those contractual duties trigger the statute? Well, your honor. Yes or no on that, please. I would, well, what we're saying is that yes, the statute applies. That is what you, and. Explain the court. Okay. Yes, your honor. What we're saying is here that by the mere inception, by them being a third-party contractor, right, they're not an innkeeper. The innkeeper is the hotel, there's no question about that, but they assume those responsibilities. So when the court addresses these, and we have to address the errors, then of course we're saying. Okay, so just under the statute, there's an analysis that has to be undertaken. Certain, the district court concluded, I don't even know if this is correct, but the district court treated the statute as making potentially the restaurant an innkeeper under the statute, correct? Yes, it does, the meals. And you then are now saying, even if you're not the actual innkeeper, you can have a contractual relationship with the innkeeper for performing a certain function that makes you an innkeeper for purposes of the statute, then you have the heightened duty. That's your argument you're now making. Yes, yes. And I think that. Okay, and if to do that analysis, is your position any entity that the innkeeper has a contract with becomes the innkeeper? No, your honor. Okay, so what's the line that you're relying on that supports the idea that this contract, this contractor is? Well, your honor, the court cites two cases, right? One of them being Willis, and the other one, I don't know if I'm pronouncing this right, but it's Petschick. So in those cases, particularly in the Petschick case, it was ruled that someone that provides accounting services, advertising services, and internet services, and is a provider for the hotel, certainly is not involved in the daily operation, which differs completely from this case. Those are Puerto Rico Supreme Court cases? Those are cases, your honor, from this district court, from the district court, yes. And when you go to the court function. Is there any case in Puerto Rico law under the innkeeper statute of treating somebody other than the owner of the hotel as an innkeeper? Not that I know of, your honor. Not that I know of. But if, without that being, without us making that extension, you can't win, right? I didn't understand the question, I'm sorry. Without us making that extension, without us saying that somebody who is not an innkeeper and merely contracted for certain types of services, that's the only way that statutory heightened duty applies in this case. You agree with that, right? Well, in relation to being an innkeeper, yes, your honor. Yeah, got it. But we have to... Other arguments, too. Yes, your honor. But as I was saying, the court functions and did not run the day-to-day operations that the court used to conclude there was a liability on the innkeeper is incorrect because the hotel has, as Sandra Santa stated, those main amenities and two of them are run by the innkeeper. So on the other hand, going back to Judge Helpe's question about the permit in the article, your honor, I will refer you to condition number 28 on the permit. Condition 28 was the one that you posed the question on. An article 28 states that something very simple and it's very important for the court that it was one of the main issues that defendants stressed out at the district level but hasn't done so here on the brief, he hasn't briefed those. So the thing about the weather conditions is the following. It requires two things. One, it requires them to close the... When there are conditions that does not allow risk conditions that are allowed to operate the business. And on the other hand, it requires the business to be knowledgeable to the point, your honor, that even if there is not a National Weather Service volunteering on that day... Here there was. Here there was. Well, here there was. That's... Admittedly, they didn't look at it. So even if there wasn't or even... I thought the district court said that the warning about riptides, it doesn't fit within the language of weather. No, I... That's how I read the district court. The district court, hurricanes, storms, thunderstorms, all of that.  But that's the beach. That's what's happening. Yes, your honor. What's happening in the ocean is not a weather. That's their position. What's wrong with that? Yes. Well, here's the thing, your honor. It refers... That clause refers, your honor, to the National Weather Service. National Weather Service is just a... It's a weather condition. It's just a weather bulletin. This is an island. So it covers the first thing, not the weather. The first thing that it covers is the ocean conditions, life-threatening conditions on that day. It even goes farther. It says that if operating on those conditions, you will need a lifeguard, right? But that's another subject. But the thing is that it refers you there. So when it refers you there, it's obvious that when you receive that document, you need to abide by it. But it goes farther, that condition number 28, because it tells you, you got to be prudent on adverse conditions. How are you not going to know of adverse conditions if you haven't looked at these... Do you just think the district court was wrong to draw the distinction between the ocean and the beach? Of course, your honor. Because the National Weather Service... Do we have any insight as to how we would decide that question? I mean, do we know how the language has been interpreted in other cases or anything like that? It hasn't, your honor, been interpreted. I mean, we scoured everything that we could, and it hasn't been. But the thing is, your honor... Shouldn't that be a question for certification, then, to the Puerto Rico Supreme Court? I have thought about it. I thought that this question might come during the argument. And I really think that it doesn't, it's my opinion, because analyzing it, it would only require the court to go into Regulation 28, directs the operation into the National Weather Service. The National Weather Service covers the ocean. It is obvious that you need to know those conditions and operate. On the other hand, it wouldn't change the law of the land in terms of damages, right? On Article 1536, on how it operates, that, by the way, it doesn't require a specific duty or that it requires this forcibility, which in this case, with all the fact that I have... It was foreseeable, you put them with masks and snorkels, of course, you cannot use those on the sand, on the 250 meters that you want to assess that they're operating. Let me ask you this, Mr. Wilson, when he died, he just went into the water. He was not snorkeling, right? No, he was, your honor. He was there on the beach. And there's another point that I will... You reserved time, didn't you? Yes, your honor. Okay, thanks. Thank you very much. Sorry. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, your honor. Attorney Jose Martinez Chaverez on behalf of the appellee, Iguana Sports Services Court. May it please the court? Could you start by going directly to Condition 28? I think that's the strongest argument, I think. Yes, your honor. Yes, your honor. Condition 28 says, the operation of the business will be subject to weather conditions. The concessionary will be responsible for exercising prudence in climatic conditions that may become a threat even when the meteorological service does not issue a warning in this regard. So prudence if they're renting chairs and giving towels and this is not like the beach is three miles away. The beach is there, the sand is there, the chairs are there, doesn't prudence dictate you know at least say careful with the water, if something dangerous is happening you shouldn't go in at minimum? Your honor, our interpretation is that that clause needs to be interpreted in light of the whole permit. This permit only allows Iguana to operate within 250 square feet within the sand. So when it says prudence subject to the weather conditions, it has to do with anything that could happen within those 250 foot square where Iguana was authorized to operate. And considering the services that this... But the beach is there, the lounges are there, the chairs are there, the towels, the water is there. People like the water, maybe just get their feet there, just to get to their belly, whatever, but people who go sunbathe are likely to go in the water. Yes your honor, but the thing is like... This would mean that Iguana would have to put a lifeguard, but at least don't they have to give those warnings? Don't they have any responsibility? Our understanding of this permit is that it's not your honor. Because when it says weather, that doesn't include ocean conditions. It was not in the brief, and actually I think it was not in the opinion and order of the court, but we submitted to the court when we filed the motion for summary judgment how that term weather needs to be interpreted. And we provided the court with different definitions from dictionaries, none of which included ocean conditions as to the term weather. So our interpretation is that... Condition... Doesn't the weather... Weather might be weather, but weather affects ocean conditions. If there's a hurricane, of course the water is going to get really choppy. I understand your honor, but there is... On the other hand, you might have the nicest weather in the world, and they're still saying careful with the maritime conditions because they're under tow. Exactly. I understand that your honor, but the thing is like, for us, ocean conditions are not the same as weather. I know that weather can be interpreted that altering the ocean conditions, but in this record, there is no evidence of any sort pointing to that interpretation that... Your basic point, nothing indicated it was unsafe to be on the beach. It just indicated it might be unsafe to be in the ocean, but that's not within weather. That's your idea. Yeah. So on the innkeeper side, I guess your opponent is now arguing that the innkeeper statute applies. And the reason it does is because if it applies to a restaurant that the hotel has contracted with to serve meals to its patrons, there's no reason it shouldn't apply to this contractor as well. What's your response to that? First, your honor, that the statute does not only talks about restaurants and cafes. of those kind of operations that could be considered as a hotel itself. The second one is that here... It doesn't say that exclusively, does it? I think it mentions cafes... It mentions it, but doesn't as an example. I don't view that as...  But your honor, the evidence in this case, the only evidence in this record states that... But you, just first of all, you're not denying that they're making that argument on appeal? Oh, no, your honor. They are arguing that Iwana has the same responsibility as the hotel. Yeah. I agree with that. Under the statute? Yes. Okay. And that's because of the nature of the duties they've been assigned under the contract? Exactly. Yeah. And what is your ground for distinction so that the restaurant would count and this wouldn't? I mean, I take one argument is only restaurants, that's it, nothing else. Because in here, your honor, Iwana was hired to perform certain specific duties. That's true of a restaurant. That is. Well, but a restaurant could be considered as there are gyms. One of those things that hotels are used to provide, which suits... I mean, don't beach resorts provide chairs? Yeah. And they have to. Yeah. Under the regulation. So, how is that a great distinction from... You're saying that all hotels might have to have restaurants, but only certain special hotels would have to have beach chairs? I'm just not following. What's the... The ones that are close to the beach are obligated to provide beach chairs to their guests, your honor. What do you have to say about the Iwana employees wearing the Marriott outfits? They're wearing... Yes. If I'm a guest, any guest would probably think these are Marriott employees. Probably, if you go to a restaurant, they probably also have Marriott uniforms. Yeah, your honor, that is... But that doesn't change what were Iwana's responsibility and their lack of duties with respect to the dangers of the ocean in this case. Okay. Well, that's between the contractual relationship, per se, perhaps between the hotel and Iwana. But from the deceased's perspective, tourists come, they know about the contract, they see somebody wearing a Marriott uniform, and shouldn't we look at it in the light most favorable to that perspective? No, your honor, no. Because as the records show, your honor, Iwana's responsibility here were very clear. It were based in the contract, and it were based on a permit. So, I understand what can be interpreted, but that doesn't mean that Iwana had took the hotel responsibilities as to the security of the ocean. That is a hotel responsibility, and there is evidence in the record that the hotel at all time retained that responsibility and never transferred that responsibility to Iwana. There is not a single document or testimony saying that the hotel transferred their security obligations as to the ocean to Iwana. And in this case, I'm going to ask the question to opposing counsel also, the hotel was never sued. Marriott has never been a part of here, correct? It was sued. In the same case? Yes, your honor.  In the statute, section 711B, when it defines innkeeper, right? I'm sorry, your honor, can I look at the statute? What section? The court mentioned? Section 7, 10 LPRA, section 711B. B, yes. Okay, so A is defining what a hotel is. Yeah. And then it says, the fact that meals are offered in a restaurant or cafe operated within the hotel premises by a person other than the innkeeper doesn't preclude it from being a hotel. Okay, so that's one. Then B is the definition of an innkeeper. Yes. Okay, and B is any person, firm, corporation or other type of business organization engaged for profit in the operation of a hotel. Okay, and I take it the question is, what does it mean to be engaged for profit in the operation of a hotel? One possibility is that means the owner of the hotel, right? The business entity that actually owns the hotel. Another possibility is entities that are doing work for the hotel for profit. What's your position as between those two possibilities? My position, your honor, the statute mentioned in the operation of the hotel. That term doesn't include what the evidence in the record shows were the responsibilities of Iwana. I'm trying to understand why. Is it your view that a restaurant run by the hotel is an innkeeper for purposes of B? Yes, could be. Well, then if that's the case, there's nothing in B that explains where the line is drawn. So to Judge Helpe's question about certification, if you're taking the position that B can include more than the entity that owns the hotel and can include a contractor that is operating some function for the hotel, I'm having trouble seeing in B how I would know that these functions in the eyes of the Puerto Rico Supreme Court are not the right function. Your honor, there is cases of the district court that, for example, has interpreted that a gym is an innkeeper. Inn is an innkeeper. Yes, there are cases. That's not helpful for you. Where do we draw the line? Restaurant, gym, maybe the hotel pharmacy, but then this. And whatever way we rule, let's say against your client, that opens the door for tons of litigation against anybody who's doing similar facilities. So my question is why shouldn't this be certified? Opposing counsel doesn't believe so. Is your position it doesn't need to be certified? No, your honor, I don't think it has to be certified. Particularly when section B mentioned in the operation of the hotel. Operation takes more than providing chairs and umbrellas.  How about a small restaurant? Is that in the operation of the hotel? You said yes. So how, I mean, I don't know. No, no, no. I'm sorry. I might use the chairs more than the restaurant. I'm sorry, your honor. I didn't say that a restaurant, I'm sorry. I didn't say that a restaurant is an operator of the hotel. I said that it could be interpreted as an innkeeper. Yeah, that's B. Yeah. To be an innkeeper, you must be engaged in the operation of the hotel. I think we must look to the contract that a restaurant perform with a certain hotel in order to earn more. I think there's a possibility that this whole thing is being read wrong and that to be a hotel, you have to meet A. Having a restaurant at the hotel doesn't stop you from being a hotel. And then under B, to be engaged for profit in the operation of a hotel means you're running the hotel. You own it, et cetera. So that would mean the restaurant's out, the gym is out, everybody else is out except for the entity that actually runs and owns the hotel. But you're not taking that position, and having taken that position, that was not the district court's view.  No, your honor. Let me ask you one last question.  Have you and opposing counsel appeared before settlement counsel for the circuit? I'm sorry, your honor. Have you and opposing counsel appeared before settlement counsel? Have you had a settlement conference? Yes. The camp process. You've been through the camp process. Oh, yeah, yeah, yeah. I mean, no, no, no. We didn't participate. It was never celebrated. Okay. Because we were really apart, your honor. Okay. Thank you. Sure. Thank you. Thank you, counsel. At this time, would counsel for the appellants, please. You need to sit down. I'm sorry. Thank you. Would counsel for the appellants, please. Jorge Guindana for the record again. Okay. So, your honor, we'll go on to the innkeeper. What I was going to mention before brother counsel took his time, it was that on this beach, right, other than the uniforms, when they come out of the hotel, everyone is in the hotel for them because they're dressed up in the same way with the same uniform. But it's also important to understand that on the record, there's Iguana's president's testimony to the fact that this relationship has grown to the point where they started on the agreement, they say one or two employees, and now it's up to 10. What the hotel does, the employees of the real employees of the hotel, what they do is they're waitresses. They're taking food and drinks over there. The rest of the staff taking care of the guests that come to enjoy the amenities are Iguana's employees. It is on them that they rely when they're on the beach. In relation to the duties, about the 250 square feet, there's also evidence that's been provided as these chairs are in front of the water where they meet the sand. But other than that, it's the duty that they have in relation to that sand operation and the other ones that they have on the sea. It's very important to note, Your Honor, that in order for them to get this permit, the regulations, the DNR regulations, requires them, without which regulation is very clear, very expressed, without which they cannot obtain the permit. It would be deemed incomplete and then denied. And one of those items is that they need to do three studies, rip currents, sediment movement, and bathymetric of the ocean. Of course, when you add everything up with the permit, that entails that they need to know that, because within the realm of their duties is the ocean and the safety of their guests, which is obvious. It's foreseeable they are there to go to the beach. In relation to the dathmanitia? Let me ask you one other question. Go ahead, Your Honor. I'm sorry. You understand, and again, you haven't argued this. I know it's in your brief. There's the issue about the excluded hearsay testimony. Let's assume we were to agree with the district court and that doesn't go in for purposes of summary judgment. You would still, in your position, still prevail and generate a genuine issue of material fact as to liability here, correct? Yes. Yes. We're in favor of that lifeguard testimony. Yes, sir. Yes. Yes. That's our position. So what I'm going to mention is, as I said earlier, that Iguana does not brief the weather interpretation here. They do it for the purposes of the appeal. But, like I said, the regulation tells you go to the National Weather Bureau, in which the first thing is the water conditions, Your Honor. Thank you. Thank you, Your Honor, for your time. Thank you, counsel. That concludes argument number one.